UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN BANDA,<br><br>Defendant. | No. 1:23-cr-00106-ADA-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION<br><br>(ECF No. 44) |

Before this Court is Defendant Juan Banda's ("Defendant") motion to revoke the Magistrate Judge's order of detention. (ECF No. 44.) The Court held a hearing on the motion on August 21, 2023. Assistant Federal Public Defender Griffin Estes appeared on behalf of Defendant. Special Assistant United States Attorney Robert L. Veneman-Hughes appeared for the Government. Pretrial Service Officer Ryan Beckwith also appeared. Having considered the parties' briefings and arguments at the hearing, and for the reasons stated below, the Court denies Defendant's motion.

**I.**

**Procedural Background**

Defendant is charged with engaging in the business of dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), possession, transfer, and/or manufacture of a machinegun in violation of 18 U.S.C. § 922(o), and possession of an unregistered firearm in violation of 26 U.S.C.

1

§ 5861(d). (ECF No. 1.) On May 26, 2023, the Magistrate Judge ordered Defendant detained pending trial on the grounds that no conditions or combination of conditions would reasonably assure the safety of any other person and the community. (ECF Nos. 21, 23, 24.) On July 7, 2023, Defendant filed a bail review motion. (ECF No. 35.) At a hearing on July 18, 2023, the Magistrate Judge refused to reopen the order of detention after determining that the new information that Defendant proffered would not have changed the Court's reasoning at the time of the original detention order. (ECF No. 46 at 10-12.) On July 28, 2023, Defendant filed a motion to revoke the Magistrate Judge's detention order, pursuant to 18 U.S.C. § 3145(b). (ECF No. 44.) The Government filed its opposition on August 9, 2023. (ECF No. 48.) A motion hearing was conducted on August 21, 2023. (ECF No. 54.)

## II.

## Factual Background

On February 15, 2023, investigators conducted a traffic stop on a vehicle occupied by three individuals. (ECF No. 1 at 3.) One of the individuals was Arthur Garcia—Defendant's co-defendant ("Mr. Garcia"). (*Id.*) The stop resulted in investigators seizing, among other things, Mr. Garcia's cell phone. (*Id.*) An analysis of the phone revealed ongoing communications between Mr. Garcia and Defendant establishing that the two of them were engaged together in the illegal manufacture and sale of firearms. (*Id.*)

Based on this investigation, detectives executed a search warrant on Defendant's house on March 15, 2023. (ECF No. 1 at 9.) During the search, investigators recovered three completed AR-15 style rifles, one Springfield XD 9 handgun, one PMF handgun, high-capacity magazines, 650 rounds of Blazer 9mm ammunition, 368 rounds of .223/5.56mm ammunition, .40 caliber ammunition, .22 caliber ammunition, four rifle lower receivers with trigger assemblies, an auto sear, multiple firearm parts, a plate carrier vest, body armor, and Selma Bulldog gang indicia. (*Id.* at 10-11.) Defendant admitted to selling firearms and to being a member of the Selma Bulldogs. (*Id.* at 14.) The Government proffers that messages on Defendant's phone indicate he is a senior member or a leader of the Selma Bulldogs. (ECF No. 48 at 4.) Defendant disputes this characterization. (ECF No. 44 at 10.)

# III.

## Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Consequently, courts may detain a defendant prior to trial only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

When the government seeks detention, it must establish by a "clear preponderance of the evidence" that the defendant presents a risk of flight and by clear and convincing evidence that the defendant presents a danger to the community. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C. § 3142(f). Clear and convincing evidence requires a firm belief or abiding conviction that what is alleged is highly probable. *United States v. Lonich*, 23 F.4th 881, 916 (9th Cir. 2022). Courts consider the following factors in determining whether the government has met its burden: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the defendant's history and characteristics, including the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, and history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). If the court determines that there are conditions that will reasonably assure the defendant's appearance and the safety of the community, it must release the defendant from pretrial detention under the least restrictive of those conditions. *Motamedi*, 767 F.2d at 1405. "If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A

district court reviews a magistrate judge's detention order de novo. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). This means that a district court "should review the evidence before the magistrate and make its own independent determination of whether the magistrate's findings are correct, with no deference." *Id*. at 1193.

## IV.

## Discussion

The parties agree that flight risk is not at issue here. Rather, their focus is on whether there are conditions of release that can address any danger Defendant poses to the community. The Court, therefore, does not reach the question of flight risk.

**A.    Assessing the § 3142(g) factors**

**1.    Nature and circumstances of the charged offense**

Defendant is charged with serious offenses, including firearm trafficking and the possession of a machine gun. (ECF No. 48 at 3.) Defendant concedes that they are serious. (ECF No. 44 at 5.) The Court does not give the charge itself great weight, given the presumption of innocence afforded to Defendant.

However, the charged offenses are only one half of the analysis. The Court must also consider the circumstances surrounding the charged offenses. Here, over the period of a year, Defendant was involved in an extraordinary volume of firearm transactions. (ECF No. 48 at 3.) For example, in a 10-day period in April 2022, Defendant discussed over twenty firearm transactions, which included the transfer of firearms to fellow gang members and the transfer of fully automatic weapons. (*Id*.) Defendant was also manufacturing weapons during this time. (*Id*.) This is not a case involving a one-off incident or unsophisticated amateur who found himself in over his head. Rather, the allegations against Defendant paint him as a key player in a sprawling illegal arms trafficking operation.

**2.    Weight of the evidence**

Out of all the § 3142(g) factors, "the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948

///

F.2d 1118, 1121 (9th Cir. 1991).

The Government proffers that the evidence against Defendant is substantial. (ECF No. 48 at 3.) It contends that hundreds of messages from the phones of Defendant, Mr. Garcia, and Defendant's wife document a lengthy pattern of firearm transactions. (*Id*.) The Government also asserts that it recovered videos and photographs showing multiple firearms from Defendant's phone. (*Id*.) Defendant does not dispute these allegations, but instead emphasizes that courts accord the least weight to this factor. (ECF No. 44 at 5-6.)

### 3. Defendant's history and characteristics

Defendant emphasizes his strong ties to the Eastern District. He was raised in Selma, where he continues to live and maintains stable employment. (ECF No. 44 at 6.) The many letters of reference that Defendant has provided the Court demonstrate the strength of his family and social connections in the community. (*See* ECF No. 44-1.)

Defendant's criminal history is dated, and he has avoided run-ins with the law throughout his adult life. He does not have any documented mental health or drug addiction issues. (ECF No. 44 at 6.) While in custody, Defendant also began experiencing gastrointestinal medical issues. (*Id*. at 13; ECF No. 49 at 5-6.) Although he is receiving medical care at the Fresno County Jail, he argues that having continuous care from a medical team of his choosing while living close to his family not only will help him recover faster from his illness but would also incentivize him to comply with conditions of release. (*Id*.) Defendant lastly proffers that, once released, he will continue to work his full-time job assuming his health allows him to leave the house. (ECF No. 44 at 4.)

The Government emphasizes that while Defendant's criminal history may be dated, it is also serious. As a juvenile, Defendant was convicted of two counts of assault with a firearm for the benefit of a criminal street gang as well as the possession/manufacture/sale of a dangerous weapon. (ECF No. 48 at 4.) Upon his release from imprisonment, he violated his parole twice. (*Id*.) Not only is Defendant an active member of the Selma Bulldogs, but the Government contends he is either a senior member or leader in the gang. (*Id*.) Because of this, the Government asserts that Defendant's strong ties to the Eastern District are exactly what pose a threat to public safety.

5

(ECF No. 48 at 9.) If released, Defendant will return to his home in Selma Bulldog territory, where he will be able to direct acts of violence and interfere with witnesses. (*Id.*) While Defendant does not dispute his membership in the Selma Bulldogs, he does contest the Government's characterization of him as a leader. (ECF No. 44 at 10.)

The Court finds the Government's argument persuasive. While proof of gang affiliation alone is an insufficient basis on which to order detention, gang membership is nevertheless a relevant factor in a court's assessment. *See United States v. Jenkins*, No. 3:17-cr-00124, 2017 WL 2985408, at *4 (M.D. Tenn. July 13, 2017) (noting that without allegations of conspiracy or leadership, "gang membership should be considered as an individualized factor" with the § 3142(g) factors).

Here, Defendant has admitted that he is an active member of an organized street gang. Moreover, the Government has provided compelling evidence that Defendant is not only a member of the gang, but that he holds a senior position. It is not a leap for the Court to conclude that such seniority would come with the capacity to direct illicit, dangerous, and even violent activity. Defendant discounts the strength of any evidence that he holds a leadership role and argues that his strong ties to the area, the age of his criminal history, his lack of mental health and drug addiction issues, his consistent gainful employment history, and the lack of allegations of violence against him weigh in favor of release. (*See* ECF No. 44.) According to the Government's allegations, however, Defendant's full-time employment did not prevent him from manufacturing and selling firearms in the past. The Court is skeptical that access to the same job will do much to mitigate Defendant's conduct while on pretrial release. Additionally, given his admitted gang ties, Defendant's connections in the Selma community lend as much, if not more, support for his detention as for his release.

**4. Nature and seriousness of danger to the community**

The Government argues that Defendant poses a serious risk to the community for two reasons: (1) because he is directing gang violence and (2) because he is attempting to obstruct justice and to interfere with witnesses. (ECF No. 48 at 4.)

///

      **a) Directing gang violence**

The Government proffers that because of his seniority and his value as the Selma Bulldogs' firearm source, Defendant can and does order other gang members to commit violent acts. (ECF No. 48 at 4.) While Defendant was out of custody in his related state case, on April 25, 2023, he had a conversation with Mr. Garcia discussing how to avoid police attention. (*Id*. at 5.) In another conversation on May 15, 2023, Defendant stated "you need to call me on three way so I can get at him and uh tell him we need to fucking kill that noise, you know what I mean?" (*Id*.) Similarly, when Defendant was in custody in this case, he told his daughter during a jail visit on May 21, 2023, that other gang members had to "kill that noise" and referenced an individual named "Grizzly." (*Id*. at 5-6.) The Government argues that these statements demonstrate Defendant's ability to direct other gang members to commit violent acts and his ability to silence individuals who are talking in violation of gang rules. (*Id*. at 5.)

Defendant disputes both the Government's characterization of him as a gang leader and its interpretation of the intercepted conversations. He proffers that his comments during both the May 15, 2023, jail call and the May 21, 2023, jail visit were in reference to another inmate nicknamed Grizzly who was spreading rumors about Mr. Garcia. (ECF No. 44 at 8.) Defendant claims he was concerned for Mr. Garcia's safety and wanted to stop the rumors, a fear that turned out to be well-founded when inmates assaulted Mr. Garcia at the jail. (ECF No. 49 at 4 n.1.) Defendant also argues that these conversations and the concerns Defendant expressed in them are unrelated to the criminal charges in this case. (ECF No. 44 at 8 (citing *United States v. Ploot*, 851 F.2d 7, 11 (1st Cir. 1988) (holding that if defendants' actions are unrelated to an unlikely to affect proceedings on present charges, detention is not authorized)).)

The Government's arguments are persuasive. The language of Defendant's May 15, 2023, call indicates, at least, Defendant's own appraisal of his standing in the gang. Even accepting his version of events, Defendant's conversation evinces a belief that a single phone call from him could stop rumors about Mr. Garcia. In that same conversation, Defendant also stated "[l]et him keep running his mouth. He's gonna come across somebody then I was gonna reach out to uh . . . where I was in a pod there was a Selma . . . Telling him if shit goes off whatever, you see that

7

motherfucker, you handle that shit for me." (ECF No. 48-1, Exh. 1 5:7-14.) This type of confident language is consistent with an individual who holds at least some authority over other members of the gang. Defendant's May 21, 2023, conversation with his daughter only bolsters this argument.

### b) Attempt to obstruct justice

The Government also argues that Defendant has actively tried to interfere with potential witnesses in his case. (ECF No. 48 at 6.) It points to a jail call between Defendant and his wife in which they discussed Defendant's potential charges and potential cooperating witnesses. (*Id*. at 7.) Even though they do not use names, it is apparent from the call transcripts that both Defendant and his wife are discussing a specific person they believe is cooperating with the Government. (*Id*.) At one point in the call, Defendant tells his wife to "make sure he kept his mouth shut" and subsequently asks where the witness lives. (*Id*.) The Government contends that this conversation was a direct attempt to interfere with a potential witness. (*Id*.) Defendant counters that this conversation demonstrates a general curiosity about the Government's investigation and the evidence against him, not an attempt to interfere with witnesses or obstruct justice. (ECF No. 44 at 10.)

The Court finds the Government's interpretation of the conversation between Defendant and his wife compelling. The Court agrees that Defendant and his wife are discussing a specific person who they believe is a potential cooperating witness. In the conversation, not only did the Defendant ask his wife where this person lives, but also he also told his wife to "[m]ake sure he kept his mouth shut." (ECF No. 44-1, Exh. M 3:11-18.) Contrary to Defendant's characterization of the conversation, such comments are not indicative of someone merely expressing a general curiosity about the status of his case. This, taken together with Defendant's authority in the gang, weighs in favor of detention.

### 5. Conclusion

The Court finds that balancing the § 3142(g) factors does not warrant Defendant's release. The nature and circumstances of the offense, the weight of the evidence, Defendant's history and character, and the seriousness of the danger Defendant poses to the community and potential witnesses in this case all weigh in favor of detention.

**B.     Whether there are any conditions that will reasonably assure Defendant's appearance in court and the safety of the community**

First, flight risk is not at issue here. Even if it were, Defendant's strong familial and employment ties to the area along with his lack of international travel history and his history of attending court appearances would address any concerns the Court might have.

Whether any conditions of release can address the danger Defendant's release poses to the community is a closer call. Defendant contends that the property bond that he is offering for his release will "provide an overwhelming incentive to comply with all pretrial release conditions ordered by the Court." (ECF No. 44 at 13.) Additionally, Defendant has agreed to location monitoring, having a third-party custodian, and abiding by court order not to have any contact with Mr. Garcia or any witness. (*Id*.) The Court has considered these proposed conditions of release along with Pretrial Services' proposed conditions of release and finds that they cannot reasonably assure the safety of the community.

First, although the property bond Defendant is offering provides a strong incentive to comply with conditions of release, it goes more toward addressing flight risk, something that is not at issue here.

Second, Defendant's danger to the community is his ability to direct others to commit violent acts. "[W]hile location monitoring may offer useful information about [defendant's] whereabouts, it provides little to no information about what he is doing and who he is communicating with." *United States v. Cazares*, 445 F. Supp. 3d 425, 433 (N. D. Cal. 2020). Given Defendant's apparent ability to direct others and the fact that Defendant will return to Selma Bulldog territory, location monitoring will do little to protect others and the community.

Third, although Pretrial Services identified a suitable third-party custodian, that custodian will be unable to monitor Defendant all day, every day. This will make it too easy for Defendant to communicate and resume participation with his gang. Additionally, the most worrisome conversation was the call between Defendant and his wife. The third-party custodian will have little to no control over future communication between Defendant and his wife.

Finally, the Court is also concerned that these conversations all took place on jail phone

lines, which Defendant would have known the jail was monitoring. The brazenness of this conduct does not give the Court confidence that it can rely on Defendant's goodwill to abide by any conditions of release. Thus, given Defendant's particular danger to the community and since the proposed conditions of release would depend mostly on Defendant's good faith, the Court finds that there are no conditions of release sufficient to ensure the safety of the community. *See United States v. Valles*, No. 1:08-cr-0125 OWW, 2008 WL 2262620, at *4 (E.D. Cal. June 2, 2008) (internal citations omitted) ("If conditions can too easily be circumvented or manipulated, they are not effective.").

## V.
## Conclusion

The Court finds that, after considering the 18 U.S.C. § 3142(g) factors, Pretrial Services' recommended conditions for release, and Defendant's proposed conditions for release, there are no conditions or combination of conditions that can reasonably ensure the safety of the community if Defendant is released. Therefore, Defendant's motion to revoke order of detention, (ECF No. 44), is denied.

IT IS SO ORDERED.

Dated:   August 29, 2023                                    _____
                                                            UNITED STATES DISTRICT JUDGE